PAUL L. SRIBERG & another *vs.* JAMES J. RAYMOND
& others.

Suffolk.    February 5, 1976. — April 8, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER,
& WILKINS, JJ.

*Libel and Slander.*

An allegedly defamatory statement is absolutely privileged under the law of Massachusetts when it is contained in a communication mailed by an attorney to a person against whom, the communica-

---

Sriberg *v.* Raymond.

tion indicates, the attorney is threatening to bring a lawsuit, provided that the lawsuit is contemplated in good faith and is under serious consideration. [108-109]

CERTIFICATION of a question of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

*Robert S. Wolfe* for the plaintiffs.
*Robert G. Stewart* for the defendants.

REARDON, J. This matter is before us pursuant to S.J.C. Rule 3:21, 359 Mass. 790 (1971), providing for certification of questions of law to this court from other courts, including the United States District Courts. The question certified is, "Is an allegedly defamatory statement absolutely privileged under the law of Massachusetts when it is contained in a communication mailed by an attorney to a person against whom, the communication indicates, the attorney is threatening to bring a lawsuit?" We refer to the facts set forth in the memorandum and order certifying the question.

The plaintiff Paul S. Sriberg is president and majority stockholder of the plaintiff Roll Form Products, Inc. (Roll Form), which on January 24, 1975, entered into a contract with the defendant Southwest Truck Body Company (Southwest), a Missouri corporation. The defendant James J. Raymond was a resident of Missouri and counsel for Southwest. Under the contract Roll Form was to purchase stock in Mac-Fab Products, Inc. (Mac-Fab), for $750,000. Southwest owned all the outstanding stock of Mac-Fab. The contract provided that the Shawmut Credit Corp. (Shawmut), an affiliate of The National Shawmut Bank of Boston, would hold in escrow $100,000 deposited with it by Roll Form as "earnest money" to be credited against the purchase price. The closing date for the purchase was to be February 24, 1975. On February 12, 1975, Roll Form notified Southwest that it was not going forward with the purchase. On February 13, 1975, the defendant Raymond, under the letterhead of his law corporation,

wrote to the plaintiff Sriberg, in his capacity as president of Roll Form, a copy of the letter going to Shawmut, which letter contained the alleged libel which has resulted in the certification. Included in the letter was the following language:

"Your persistence, against this backdrop, of a meritorious basis for repudiation is a sham. Your conduct in this respect is reckless, willful and malicious. Your decision to pursue that course is a tragic mistake. It severely injures Mac-Fab as well as Southwest and, in view of the full manifestation of management control your people have exerted over Mac-Fab in the industry, a vast monetary amount will be required to duplicate the posture in which Mac-Fab and Southwest would have been had you closed your purchase as agreed in writing. It is quite obvious that you now are attempting to appropriate Mac-Fab's business without payment.

"If these demands are not met, suit will be instituted against Roll Form and Shawmut for actual and exemplary damages, including without limitation damages for Roll Form's misappropriation of Mac-Fab's business information communicated in connection with this purchase and in confidence, as well as for Roll Form's taking and asportation of Mac-Fab's customer orders and Roll Form's severe injury to the business reputation of Mac-Fab and its management. Injunctive relief likewise will be sought in the foregoing respects.

"Mr. Sriberg, this choice is yours!"

The transaction was not completed and Shawmut did not turn over the $100,000 it held as escrow agent. On March 17, 1975, Southwest commenced a civil action against Roll Form and Shawmut in the United States District Court, Eastern District of Missouri, Eastern Division, which alleged anticipatory breach of contract by Roll Form and a breach of fiduciary duty by Shawmut. The libel action which gave rise to the present certification was filed in the United States District Court, District of Massachusetts, on February 24, 1975. The chief judge of

that District Court is of opinion that the law of this Commonwealth determines whether the communication is absolutely privileged.

We answer the question put to us in the affirmative as qualified in the language below.

The Restatement of Torts § 586 (1938) provides that "[a]n attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding in which he participates as counsel, if it has some relation thereto." We have hitherto held that statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding. See *Aborn* v. *Lipson,* 357 Mass. 71, 72-73 (1970); *Seelig* v. *Harvard Cooperative Soc'y,* 355 Mass. 532, 538 (1969); *Mezullo* v. *Maletz,* 331 Mass. 233, 236 (1954); *Laing* v. *Mitten,* 185 Mass. 233, 235 (1904). While the Massachusetts cases have not yet done so, the rule of § 586 of the Restatement has been adopted in a considerable number of other jurisdictions. See *Brown* v. *Collins,* 402 F.2d 209, 212 (D.C. Cir. 1968); *Theiss* v. *Scherer,* 396 F.2d 646, 649 (6th Cir. 1968) (applying Ohio law); *Johnston* v. *Cartwright,* 355 F.2d 32, 36-38 (8th Cir. 1966) (applying Iowa law); *Ascherman* v. *Natanson,* 23 Cal. App. 3d 861, 865 (Ct. App. 1972); *Richeson* v. *Kessler,* 73 Idaho 548, 552 (1953); *Bergman* v. *Hupy,* 64 Wis. 2d 747, 753-754 (1974). See also *Borg* v. *Boas,* 231 F.2d 788, 794 (9th Cir. 1956); *Zirn* v. *Cullom,* 187 Misc. 241, 243 (N.Y. Sup. Ct. 1946); *Strycker* v. *Levell & Peterson,* 183 Ore. 59, 67 (1948); *Rodgers* v. *Wise,* 193 S.C. 5, 6-7 (1940); *Western States Title Ins. Co.* v. *Warnock,* 18 Utah 2d 70, 73 (1966).

We find the commentary to Restatement (Second) of Torts § 586 (Tent. Draft No. 20, 1974) persuasive. The public policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients commends itself to us.

The basic elements of such a policy were recognized early in this Commonwealth by Chief Justice Shaw in the following terms: "[I]t is, on the whole, for the public interest, and best calculated to subserve the purposes of justice, to allow counsel full freedom of speech, in conducting the causes, and advocating and sustaining the rights, of their constituents; and this freedom of discussion ought not to be impaired by numerous and refined distinctions." *Hoar* v. *Wood,* 3 Met. 193, 197-198 (1841) (statements in the course of trial). It appears desirable to install the privilege where such statements are made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation or in conferences and other communications preliminary to litigation. Where a communication to a prospective defendant relates to a proceeding which is contemplated in good faith and which is under serious consideration, it is our view that the privilege should attach. This is subject to the provisions that such proceeding is not to be employed as a shield of immunity for defamation where there is not serious consideration of suit.

The question certified is answered as we have indicated, and the Reporter of Decisions and the clerk of this court are to follow the procedure for furnishing copies of this opinion and transmitting them as set out in *Hein-Werner Corp.* v. *Jackson Indus., Inc.* 364 Mass. 523, 530-531 (1974).

*So ordered.*