1999 OK 19

**SAMSON INVESTMENT COMPANY, Samson Properties Incorporated, Samson Resources Company, and Continental Drilling Company, Plaintiffs/Appellants,**

v.

**William C. CHEVAILLIER, Mysock & Chevaillier, A.B. Conant, Jr., Raymond P. Harris, Jr., Conant Whittenburg French & Schachter, P.C., William B. Federman, Day Edwards Federman Propester & Christiansen, P.C., Defendants/Appellees.**

No. 90,452.

Supreme Court of Oklahoma.

March 16, 1999.

As Corrected March 23, 1999.

Rehearing Denied Sept. 16, 1999.

---

Robert K. Pezold, Joseph C. Woltz, Piper M. Willhite, Pezold, Richey, Caruso & Barker, Tulsa, Oklahoma, Attorneys for Appellants.

Joseph R. Farris, Feldman, Franden, Woodard, Farris & Taylor, Tulsa, Oklahoma, Attorneys for Defendants William C. Chevaillier and Mysock & Schevaillier.

R. Thomas Seymour, C. Robert Burton, F. Randolph Lynn, Tulsa, Oklahoma, Attorneys for Defendants William B. Federman, Day, Edwards, Federman, Propester and Christensen, P.C.

James M. Sturdivant, Gable Cotwals, Mock & Schwabe, Tulsa, Oklahoma, Attorneys for A.B. Conant, Jr., Raymond P. Harris, Jr., and Conant Whittenburg French & Schachter, P.C.

SUMMERS, C.J.:

¶1 We granted the motion to retain this appeal in order to address the issue of whether an attorney's circulation of a draft petition in a probable lawsuit to a prospective client can be the basis of a defamation lawsuit. We hold that the attorneys' actions were protected under the litigation privilege as recognized in our case of *Kirschstein v. Haynes*, 1990 OK 8, 788 P.2d 941 (Okla.1990). The trial court correctly granted judgment for the attorneys.

¶2 The defendants in this case are individual attorneys and the law firms with which they are associated. The attorneys caused a draft of a petition for a lawsuit to be prepared, and circulated it to at least one prospective client, Russell Caston. The petition alleged that the defendants named therein (being the Samson entities and Continental Drilling Company, the plaintiffs in this case

now before us, hereinafter referred to as Samson) had defrauded investors in transactions involving oil and gas limited partnerships. The draft petition did not contain a plaintiff's name or the name of a court. The prospective client, along with others, ultimately hired the defendants, and a class action lawsuit was filed in Oklahoma County. *See Russell Caston Jr. v. Samson Investment Co., et al.,* No. CJ–96–1836–6.

¶ 3 Samson brought this lawsuit in Tulsa County, alleging that the petition contained false material which was defamatory and which induced the prospective client to file suit. Chevaillier, Federman and the law firms with which they are associated filed motions to dismiss. Conant and Harris, along with their law firm, filed a motion for summary judgment. These pleadings essentially made the same argument: that the information contained in the draft petition was privileged, as it was made preliminary to a judicial proceeding. Because it was privileged, it cannot be the subject of a defamation lawsuit. Samson countered by urging that because there was no attorney-client relationship between Caston and any of the attorneys at the time of the petition's circulation, the asserted privilege did not prevent a defamation lawsuit. Samson urged that it was irrelevant that Caston eventually hired defendants, and pursued a judicial remedy. The trial court granted the motions to dismiss and the motion for summary judgment. Samson appealed and we retained the case.

¶ 4 We first take note of the standards of review applicable here. With regard to the summary judgment, it is only proper when there is a complete absence of disputed material facts. *Cordes v. Wood,* 1996 OK 68, 918 P.2d 76 (Okla.1996); *Manora v. Watts Regulator Co.,* 1989 OK 152, 784

P.2d 1056, 1058 (Okla.1989). The moving party has the burden of showing there is no substantial controversy as to any material fact. *Cordes,* 918 P.2d at 78. As for the dismissal, "a motion to dismiss for failure to state a cause of action will not be sustained unless it should appear *without doubt* that the plaintiff can prove no set of facts in support of the claim for relief." *Gaylord Entertainment Co. v. Thompson,* 1998 OK 30, 958 P.2d 128, 137 (Okla.1998).

¶ 5 At the heart of this case is the privilege, sometimes termed the litigation privilege, which accords attorneys, parties, jurors and witnesses immunity for comments or writings made during the course of or preliminary to judicial or quasi-judicial proceedings. *Hawkins v. Harris,* 141 N.J. 207, 661 A.2d 284 (1995). This Court has adopted this privilege as to statements made during judicial proceedings, *Pacific Employers Ins. Co. v. Adams,* 196 Okla. 597, 168 P.2d 105 (1946) and as to statements made preliminary to proceedings. *Kirschstein v. Haynes,* 1990 OK 8, 788 P.2d 941 (Okla.1990).[1] A large number of jurisdictions have adopted this privilege, either by statute or by case law.[2] All agree that the question of whether a communication is privileged is a question of law to be determined by the court. *Kittler v. Eckberg, Lammers, Briggs, Wolff & Vierling,* 535 N.W.2d 653, 655 (Minn.Ct.App.1995), *cert. denied,* 517 U.S. 1221, 116 S.Ct. 1850, 134 L.Ed.2d 950 (1996); *Harris v. NCNB National Bank of North Carolina,* 85 N.C.App. 669, 355 S.E.2d 838, 841 (1987).

¶ 6 In *Kirschstein,* a client hired an attorney to obtain a delayed birth certificate. During this process the attorney drafted an affidavit, and sent it to the physician who was present at the birth of the client. The affidavit, signed by the physician, stated that plaintiff was the client's mother, a fact that turned

1. In *Kirschstein,* 788 P.2d at 948 n. 7, a list of Oklahoma cases is found which describes the doctrine's application under different circumstances.

2. See,e.g., *Hawkins v. Harris* 141 N.J. 207, 661 A.2d 284 (1995); *Silberg v. Anderson,* 50 Cal.3d 205, 266 Cal.Rptr. 638, 786 P.2d 365 (1990); *Russell v. Clark,* 620 S.W.2d 865 (Tex.Civ.App. 1981); *McNeal v. Allen,* 95 Wash.2d 265, 621 P.2d 1285 (1980); *Chard v. Galton,* 277 Or. 109, 559 P.2d 1280 (1977); *Sussman v. Damian,* 355 So.2d 809 (Fla.Dist.Ct.App.1977); *Sriberg v. Raymond,* 370 Mass. 105, 345 N.E.2d 882 (1976); *Bergman v. Hupy,* 64 Wis.2d 747, 221 N.W.2d 898 (1974); *Western States Title Ins. v. Warnock,* 18 Utah 2d 70, 415 P.2d 316 (1966); *Richeson v. Kessler,* 73 Idaho 548, 255 P.2d 707 (1953); *Zirn v. Cullom,* 187 Misc. 241, 63 N.Y.S.2d 439 (N.Y.Sup.Ct.1946); *Rodgers v. Wise,* 193 S.C. 5, 7 S.E.2d 517 (1940); *Leavitt v. Bickerton,* 855 F.Supp. 455 (D.Mass.1994).

out to be false. The affidavit was used by an attorney to obtain a birth certificate. The plaintiff brought suit for defamation. The attorney raised the litigation privilege as a defense.

¶ 7 We quoted with approval from the Restatement on Torts (Second), Sections 586, 587 and 588, which explained this privilege. Section 586, provides as follows:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another *in communications preliminary to a proposed judicial proceeding,* or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding. (Emphasis added)

Sections 587 and 588 contain substantially the same language in regard to publications made by parties and witnesses, respectively. Comment *a* to § 586 provides in pertinent part as follows:

> The privilege stated in this section is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients. Therefore the privilege is absolute. *It protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity.* ... *The publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and other communications preliminary to the proceeding.* The institution of a judicial proceeding includes all pleadings and affidavits necessary to set the judicial machinery in motion ...

*Id.* at 947 (emphasis in original).

¶ 8 We agreed that the litigation privilege should apply to communications preliminary to judicial or quasi-judicial proceedings if the "communication has some relation to a proceeding that is contemplated in good faith and under serious consideration." *Id.* at 948 quoting Restatement (Second), Section 586,

comment e. We explained that the privilege does not give free reign to attorneys to defame; rather the litigation privilege applies only when the communication is (1) relevant or has some relation to a proposed proceeding and (2) circumstances surrounding the communication have some relation to the proposed proceeding. *Id.* at 951. We noted that the privilege applies "regardless of whether they [the communications] are true or false." *Id.* at 950.

¶ 9 Relying on *Russell v. Clark,* 620 S.W.2d 865, 868 (Tex.Civ.App.1981), we explained the public policy behind the privilege:

> Public policy demands that attorneys be granted the utmost freedom in the efforts to represent their clients. To grant immunity short of absolute privilege to communications relating to pending or proposed litigation, and thus subject an attorney to liability for defamation, might tend to lessen an attorney's efforts on behalf of his client. The conduct of litigation requires more than in-court procedures. An attorney must seek discovery of evidence, interrogate potential witnesses, and often resort to ingenious methods to obtain evidence; thus, he must not be hobbled by the fear of reprisal by actions for defamation. Yet this absolute privilege must not be extended to an attorney carte blanche. The act to which the privilege applies must bear some relationship to a judicial proceeding in which the attorney is employed, and must be in furtherance of that representation.

*Id.* at 951.

¶ 10 In *Russell,* 620 S.W.2d at 869, the Texas court noted that the privilege had been extended to cover communications to a prospective defendant. *See Sriberg v. Raymond,* 370 Mass. 105, 345 N.E.2d 882 (1976). In *Sriberg* an attorney sent a letter threatening a lawsuit. This letter became the subject of a defamation action. The court held that it was privileged, being related to a probable judicial proceeding. In *Chard v. Galton,* 277 Or. 109, 559 P.2d 1280 (1977), the Oregon Supreme Court held that the litigation privilege extended to communications preliminary

to a lawsuit, since the preliminary communication in the form of a letter had some relation to the impending lawsuit.

¶ 11 *Hawkins v. Harris,* supra, explains the extent of the privilege as it applies to communications preliminary to a judicial proceeding. "The litigation privilege is not limited to statements made in a courtroom during a trial; 'it extends to all statements or communications in connection with the judicial proceeding.'" *Id.* at 289, *quoting Ruberton v. Gabage,* 280 N.J.Super. 125, 654 A.2d 1002 (1995). It extends to preliminary conversations and interviews between prospective witnesses and an attorney as long as the communications are related to the prospective judicial action. *Id.*

¶ 12 Samson urges that the privilege does not apply in this instance, even though the petition was clearly a communication related to probable lawsuit, because the communication was a solicitation by an attorney to gain clients. As such, Samson claims that the absence of an attorney-client relationship prevents the application of the litigation privilege. This issue was addressed in *Kittler v. Eckberg, Lammers, Briggs, Wolff & Vierling,* supra. There, corporate officers and directors brought a defamation suit against a law firm. The basis of the suit was the law firm's circulation of a letter which stated that the firm, at the request of some former shareholders, was considering the filing of a law suit against the corporation. The letter stated the firm's fee before undertaking such a suit. It was sent to fifty-six former shareholders. The court held that this communication was privileged as a matter of law. Citing the Restatement, § 586, the court noted that this was clearly a communication preliminary to a probable judicial proceeding. The court continued by explaining that "attorneys' letters of solicitation are protected as commercial free speech." *Id.* at 655. The court reasoned that "we can imagine few communicative acts more clearly within the scope of the privilege than those alleged in the amended complaint ..." *Id., quoting Rubin v. Green,* 4 Cal.4th 1187, 17 Cal. Rptr.2d 828, 847 P.2d 1044 (1993). Likewise, the North Carolina appellate court held that the contents of an unfiled complaint were privileged. *Harris v. NCNB National Bank of North Carolina,* 85 N.C.App. 669, 355 S.E.2d 838 (1987).

¶ 13 No case is cited by Samson, and our research has revealed none, to support its argument that the litigation privilege only applies after the client has retained an attorney. The Restatement does not support this position, as it only requires that the communication be relevant to the probable proceeding. *Kirschstein* does not support the argument, because it clearly states that preliminary communications are privileged as long as they are relevant to the proceeding and the circumstances surrounding the communication are relevant to the proceeding. The purpose behind the litigation privilege of permitting open communication to facilitate "the right of access to judicial and quasi-judicial proceedings", *Hawkins,* at 289, would be thwarted if Samson's argument was adopted.

¶ 14 However, we again reiterate that the litigation privilege is not a license to defame. *Kirschstein* sets limits on this privilege in the form of the aforementioned requirements. We must determine if this communication meets this requirements. First, we hold that the proposed petition meets the requirement of being relevant to a judicial proceeding. Obviously, the petition is the first building block of any law suit, and is essential to the commencement of a judicial proceeding. As for the second requirement, the circumstances surrounding the petition's distribution to the prospective client Caston were also related to the proposed judicial action. The petition communicated to Caston the allegations to be made during the course of the law suit. He was a potential client, and a potential plaintiff. His viewing of the petition was a necessary step toward filing the class action suit. The case was filed in Oklahoma County District Court. This communication met both requirements of *Kirschstein.*

¶ 15 As a matter of law the plaintiffs cannot prevail in this action. The summary judgment and the order of dismissal for failure to state a claim were both proper. The

judgment of the District Court of Tulsa County is affirmed.

¶ 16 HARGRAVE, V.C.J., HODGES, LAVENDER, SIMMS, ALMA WILSON, and WATT, JJ., concur.

¶ 17 OPALA, J., concurs in judgment but not in the court's pronouncement.

¶ 18 KAUGER, J., concur by reason of stare decisis.

