John A. TAYLOR, individually and
p/p/a W.C.T.S., Plaintiff,

v.

Susanne G. SWARTWOUT
et al.   Defendants.

No.  CIV.A.03–10157 NMG.

United States District Court,
D. Massachusetts.

Feb. 27, 2006.

Alanna G. Cline, Brighton, MA, for Susanne G. Swartwout, Dean Amrose, Jennifer M. Norton, Paul M. Kane, Defendants.

Gary C. Crossen, Rubin & Rudman LLP, Boston, MA, for David J. Prum, Defendant.

Nur-ul Haq, Rubin and Rudman, LLP, Boston, MA, for David J. Prum, Dean Amrose, Defendants.

Kelly A. Jumper, Sloane and Walsh LLP, Boston, MA, for Dean Amrose, Jennifer M. Norton, Paul M. Kane, Defendants.

Ross A. Kimball, Sloane & Walsh LLP, Boston, MA, for Dean Amrose, Jennifer M. Norton, Paul M. Kane, Defendants.

Myles W. McDonough, Sloane & Walsh, LLP, Boston, MA, for Dean Amrose, Paul M. Kane, Defendants.

John P. Ryan, Sloane & Walsh, Boston, MA, for Dean Amrose, Paul M. Kane, Jennifer M. Norton, Defendants.

Andrew Stockwell–Alpert, Boston, MA, for David J. Prum, Defendant.

John A. Taylor, Bristol, NH, for John A. Taylor, Plaintiff.

Sara M. Webster, Mellon, Webster & Shelly, P.C., Doylestown, PA, for John A. Taylor, Plaintiff.

## MEMORANDUM & ORDER

GORTON, District Judge.

In the instant dispute, plaintiff John Taylor ("Taylor") alleges that his former girlfriend, her private investigator and several attorneys from a law firm she hired have committed a series of torts against him. The defendants, with the exception of Susanne Swartwout ("Swartwout"), Mr. Taylor's former girlfriend, move for summary judgment. The Court resolves those motions as follows.

### I. Background

In 1995, Mr. Taylor and defendant Swartwout began dating. Mr. Taylor alleges that Ms. Swartwout quickly developed an "unnatural and obsessive fixation" on him, which continues to the present. As part of that alleged fixation, Ms. Swartwout "successfully endeavored to become pregnant—with contemporaneous birth control misrepresentations to Taylor". Caelen Taylor Swartwout ("Caelen") was born in February, 1996.

Mr. Taylor alleges that, over the next seven years, Ms. Swartwout stalked him. He alleges that she repeatedly called him late at night, trespassed on his property, killed his cat and left it at his home, stole his personal files, physically and verbally assaulted him and initiated contacts with local authorities to make false allegations against him.

Mr. Taylor also alleges that, beginning in January, 2000, Ms. Swartwout made repeated efforts to "identify [him] as a notorious or dangerous drug smuggler, drug user, and drug money launderer" to help her win custody of Caelen in protract-

ed Probate Court proceedings. Ms. Swartwout's allegations were apparently fueled by three documents which surfaced during that case. Two of the documents were the product of an investigation of an attorney in an unrelated grand jury investigation. Those two documents, an investigative report and a statement that was to be signed by William Terry, III ("Terry"), detail allegations made by Mr. Terry concerning certain drug-dealing ("the Terry documents"). The third document was a letter written by Mr. Taylor to his then co-counsel Anthony Traini ("Traini") in connection with their defense of Mr. Terry when Mr. Terry was charged by the government with drug smuggling activities ("the Traini letter"). According to Mr. Taylor, the documents identify him as a drug smuggler, drug user and drug money launderer. Moreover, he claims the Traini letter was stolen from his home along with other files. He alleges that the defendants have repeatedly "published" those documents, to his great embarrassment and humiliation.

During the pendency of this dysfunctional relationship, plaintiff successfully petitioned the Probate Court to award him full custody of Caelen. The complaint in this case contains lengthy quotations from the Probate Court's findings of fact, several of which substantiate the allegations of stalking. Notably, the court stated that Ms. Swartwout had been extremely uncooperative with the judicial process and implored her to seek mental help.

The other defendants became involved in this case as a result of the custody litigation. They are Dean Amrose ("Amrose"), Paul M. Kane ("Kane") and Jennifer M. Norton ("Norton"), attorneys associated with the law firm of McGrath & Kane, hired by defendant Swartwout to represent her in the custody action, and Joseph E. McCain ("McCain")(now de-

ceased) and David J. Prum ("Prum"), private investigators who assisted Ms. Swartwout.

With respect to Attorneys Amrose, Kane and Norton, the plaintiff alleges that they actively encouraged and abetted Ms. Swartwout's "intrusive and tortious behavior as part of an investigatory litigation strategy" and, furthermore, engaged in that behavior directly. Of particular concern to Mr. Taylor is "the indication that members of that firm participated directly in the preparation of the fraudulent William Terry documents" and the publication of the Traini letter. Mr. Taylor's complaint implies that the attorney-defendants were somehow involved in Ms. Swartwout's alleged theft from his home of the Traini letter and other files regarding his participation in Mr. Terry's defense.

Mr. Taylor's allegations with respect to Mr. McCain concern the latter's involvement, through the JEMIS Group, as the "alleged source of the William Terry documents". Mr. McCain was involved in an unrelated case which gave rise to the Terry documents, although Mr. McCain's source of those documents remains unclear. Mr. McCain, unsolicited, contacted Ms. Swartwout in the midst of her custody battle with Mr. Taylor in order to share the documents with her. Based on Mr. Taylor's allegations, Mr. McCain's activities bear directly upon many of the plaintiff's claims. Nevertheless, Mr. McCain died in late 2001 and Mr. Taylor concedes that he should no longer be listed as a defendant in this case. With respect to Mr. Prum, a former associate of Mr. McCain, the plaintiff alleges simply that he "re-published the fraudulent" Terry documents and Traini letter.

Among Mr. Taylor's many allegations, he asserts that, upon being informed by his attorney of the disclosure of the Terry documents in the custody litigation, he was

put in a state of great distress, causing him to suffer "grievous, and nearly fatal" physical injuries in an accident at his home. Mr. Taylor contends that the accident

> was proximately related to his highly fatigued and fatalistic state of mind and compromised judgment in the aftermath of Swartwout's agent's publication of the fraudulent Terry Report [to his attorney].

Plaintiff filed suit against the defendants on January 23, 2003, alleging counts of: 1) stalking (only with respect to Ms. Swartwout), 2) invasion of privacy, 3) defamation, 4) fraud/misrepresentation, 5) abuse of process 6) infliction of emotional distress, 7) "conspiracy", 8) Civil RICO, 9) negligence, 10) violation of M.G.L. c. 93A (only with respect to the attorney defendants) and 11) loss of parental society. He seeks damages in the amount of $5,000,000.

The case was initially assigned to United States District Judge Tauro but was reassigned to this session on July 13, 2004. Before reassignment, the defendants moved to dismiss and those motions were denied by Judge Tauro without a written memorandum and "without prejudice to the underlying issues being raised again in motions for summary judgment". Now that discovery has been completed, the defendants move for summary judgment. Defendants Amrose, Kane and Norton, individually and d/b/a McGrath & Kane, filed a joint motion and defendant Prum, individually and d/b/a the JEMIS Group, filed his own motion. In response, Mr. Taylor has filed a combined opposition to the motions for summary judgment.

## II. *Discussion*

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Analysis

The motions for summary judgment are brought by four defendants: Amrose, Kane, Norton and Prum. Of those four, Mr. Taylor has been unable to justify clearly the inclusion of three of them in

this lawsuit based simply on the facts, namely Attorneys Kane and Norton and Mr. Prum. With respect to Attorney Amrose, plaintiff has presented no evidence to counter his invocation of the litigation privilege.

### 1. Kane

In his affidavit, Attorney Kane asserts that 1) he has never worked for Attorney Dean Amrose or on any of his cases, 2) he has never met Ms. Swartwout, worked on the custody case for Attorney Amrose or entered an appearance in that case, and 3) he had no involvement in the creation of the Terry documents. Mr. Taylor does not refute any of those sworn statements and he has offered no substantive evidence to lead this Court to conclude otherwise. With the exception of a Chapter 93A demand letter he received from Mr. Taylor dated August 31, 2000 (which he may or may not have read), Attorney Kane can be classified most accurately as a peripheral player with no role in the alleged publication of the Terry documents that go to the heart of Mr. Taylor's claims.

At oral argument of the pending motions, Mr. Taylor admitted that Attorney Kane was named as a co-defendant in this case only because he is a principal in the law firm of McGrath & Kane and, therefore, would be liable under partnership liability principles if the firm is found liable on any of Mr. Taylor's claims. Nevertheless, plaintiff has offered no evidence that McGrath & Kane is, in fact, a partnership and, upon further investigation, it has been determined that the firm is a corporation (the official name of which is McGrath & Kane, Attorneys at Law, Inc.). Attorney Kane is listed as the Registered Agent and Secretary of that corporation.

[1–3] Corporate officers are personally liable for any tortious activity in which they personally participate. *Frontier*

*Mgmt. Co. v. Balboa Ins. Co.*, 658 F.Supp. 987, 991 (D.Mass.1986). Officers of a corporation do not, however, incur personal liability for torts committed by corporate employees merely by virtue of the position they hold in the corporation. *See, e.g., Tibbetts v. Wentworth*, 248 Mass. 468, 143 N.E. 349 (1924). Mr. Taylor has failed to establish a connection between Attorney Kane and the tortious activity alleged in his complaint. Thus, summary judgment will be entered in Attorney Kane's favor with respect to the claims against him.

### 2. Norton

Similarly, the claims brought by Mr. Taylor against Attorney Norton are vague and lack the proper legal and evidentiary foundation. Attorney Norton was an associate of Attorney Robert McGrath and states in her affidavit that she did not work for Attorney Amrose or on his cases. She avers that she neither entered an appearance in the subject custody case nor ever met Ms. Swartwout. According to Attorney Norton, the extent of her involvement with Ms. Swartwout was the taking of a message from her on August 23, 1999 while Attorney Amrose was on vacation and reporting the substance of that message to him the following day.

[4] Mr. Taylor has produced no evidence that Attorney Norton was either involved in the creation of the Terry documents or took part in any of the other tortious conduct he alleges. He produced a document in which Attorney Amrose reported Attorney Norton as an attorney working on the custody matter at a contract rate of $175 per hour as part of his "Schedule of Anticipated Legal Activities and Expenses" submitted to the Probate Court on September 23, 1999. Although Mr. Taylor asserts that the document infers that Attorney Norton had more involvement in the custody case than she has

admitted, he disregards the word "Anticipated" in the title of the document. Mr. Taylor has offered no evidence that Attorney Norton had any actual involvement in the custody case beyond that which she described, nor does he link her to the touted Terry documents or Traini letter. Thus, summary judgment will also be entered in favor of Attorney Norton.

### 3. Prum

Mr. Prum stated in a deposition taken in this case that his involvement in it began in 2002 when, following the death of Joseph McCain, he expressed an interest in purchasing the files and other assets of the JEMIS Group. Mr. Prum took custody of the files in order to evaluate the possible purchase. During his negotiations to purchase the files, Mr. Prum was asked in November, 2002, by Ms. Swartwout to authenticate certain documents as a keeper of the records, namely the Terry documents and Traini letter. Those documents were to be used by Ms. Swartwout in her ongoing custody battle with Mr. Taylor. Mr. Prum described the origin of the documents to a guardian ad litem in the custody proceedings and executed a keeper of the records affidavit authenticating that the documents came from the files of the JEMIS Group.

Beyond those bare facts, Mr. Prum had no other apparent connection to this matter. The purpose of Mr. Prum's affidavit in the custody case was to prove where the documents came from and the affidavit was not entered into evidence in the custody proceedings. Mr. Taylor has not alleged that Mr. Prum shared the documents with anyone other than Ms. Swartwout's counsel. It stretches credulity to suggest that Mr. Prum's actions as an authenticator of the disputed documents could lead to his liability in this suit

on any one of the nine counts brought against him.

Mr. Taylor makes various allusions to Mr. Prum's previous work for Mr. McCain prior to receiving his private investigator license in 1997. Plaintiff attempts to connect Mr. Prum to the JEMIS Group's initial acquisition of the Terry documents and Traini letter but provides this Court with mere supposition which, even if believed, is immaterial to the alleged publication of those documents. Thus, the Court will also allow summary judgment with respect to the claims against Mr. Prum.

### 4. Amrose

The fourth and final defendant moving for summary judgment is Attorney Dean Amrose. Unlike the other individual defendants, Attorney Amrose was intimately involved in the custody litigation between Mr. Taylor and Ms. Swartwout. In fact, it is his pervasive involvement in that litigation that now makes summary judgment appropriate with respect to the plaintiff's claims against him.

The Restatement of Torts, § 586 (1938), states that

[a]n attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding in which he participates as counsel, if it has some relation thereto.

*See Sriberg v. Raymond*, 370 Mass. 105, 108, 345 N.E.2d 882 (1976)(quoting the Restatement of Torts). In *Sriberg*, the Supreme Judicial Court of Massachusetts discussed the so-called litigation privilege and held that it attaches to statements made by an attorney "in the institution or conduct of litigation or in conferences and other communications preliminary to liti-

gation." *Id.* at 109, 345 N.E.2d 882. "The privilege is absolute" and "provides a complete defense even if the offensive statements are uttered maliciously or in bad faith." *Doe v. Nutter, McClennen & Fish,* 41 Mass.App.Ct. 137, 140, 668 N.E.2d 1329 (1996). Moreover, the privilege "protects the maker from any civil liability based thereon." *Id. See also Blanchette v. Cataldo,* 734 F.2d 869, 877 (1st Cir.1984) ("Massachusetts courts have applied the privilege, not only in defamation cases, but as a general bar to civil liability based on the attorney's statements.").

■ Attorney Amrose asserts in his affidavit that the conduct of which Mr. Taylor complains took place in the context of the custody litigation. A central criterion in custody litigation is the determination of the best interests of the child. *Bak v. Bak,* 24 Mass.App.Ct. 608, 616, 511 N.E.2d 625 (1987). Parental drug use is a relevant consideration in the determination. *See, e.g., Adoption of Nicole,* 40 Mass.App. Ct. 259, 263, 662 N.E.2d 1058 (1996). Attorney Amrose argues that the Terry documents, Traini letter and the allegations of drug use in Ms. Swartwout's answer to interrogatories were pertinent to the custody litigation and, thus, he is protected by the litigation privilege.

In his attempt to refute defendant's invocation of the litigation privilege, Mr. Taylor contends that because the publication of the allegedly defamatory documents did not occur until January, 2001, some 12 months after Attorney Amrose withdrew as Ms. Swartwout's counsel in the custody case, "the chief tortious act at issue did not occur during [his] representation of her in a contemplated or actual court proceeding." Nevertheless, it is settled law that the requirement that a statement be "pertinent to the proceedings" in order to come within the privilege "is to be broadly construed." *Blanchette,* 734 F.2d

at 877. Moreover, Mr. Taylor has admitted in his complaint that the conduct complained of with respect to Attorney Amrose and his fellow attorneys occurred within the context of the custody litigation.

Next, Mr. Taylor asserts that the "privilege does not attach to a lawyers' [sic] actions in promoting, utilizing or acquiescing in the criminal or fraudulent acts of others." He adds that Attorney Amrose has been involved in and had knowledge of the creation of the Terry documents as well as the alleged trespasses, thefts and invasions of privacy committed against him by Ms. Swartwout and her private investigators. However, those allegations are based not on facts or evidence but rather on insinuation and supposition.

For example, Mr. Taylor insinuates that Attorney Amrose participated in the creation of the Terry documents because the typeface appearing on those documents matches the one found in a Freedom of Information Act ("FOIA") letter to the U.S. Attorney's Office from Attorney Amrose. Plaintiff also claims that the misspelling of his sister's name (Lee) which appears in the Terry documents is the same misspelling that appears in the FOIA letter from Attorney Amrose and in his answers to interrogatories. The implication that Attorney Amrose is the only person in the world who uses the particular typeface present in the Terry documents or that he is the unique misspeller of the name "Lee" (e.g., "Leigh") is underwhelming (and unavailing) evidence of Attorney Amrose's involvement in tortious activity.

Mr. Taylor also cites *Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976), in support of his challenge to the absolute litigation privilege in this case. Given that *Tarasoff* 1) concerned psychotherapists rather than attorneys and 2) is not binding precedent on this Court, Mr. Taylor's reli-

ance on that case demonstrates his misunderstanding of the litigation privilege under Massachusetts law.

Plaintiff has unsuccessfully challenged Attorney Amrose's invocation of the litigation privilege. In the absence of any substantial evidence against him, this Court will enter summary judgment in favor of Attorney Amrose with respect to the claims against him.

## ORDER

In accordance with the foregoing, Defendants' Motions for Summary Judgment (Docket Nos. 85 and 90) are **ALLOWED.**

**So ordered.**