Gershengorn, Wendie I., J.
Plaintiff, Gary Visnick (“Visnick”), filed this action in ten counts against the defendants, Marriott International, Inc. (“Marriott"), and Jeannette Caulfield (“Caulfield”), alleging breach of expressed employment contract (count I),[3] breach of implied employment contract (count II), promissory estoppel (count III), defamation by slander (counts IV and X), defamation by conduct (count V), violation of the Massachusetts Wage Act (count VI), malicious interference with advantageous business relations (count VII), wrongful procurement of breach of contract (count VIII), and defamation by libel (count IX). Defendant Caulfield filed a counterclaim against Visnick in one count alleging retaliation in violation of G.L.C. 151B, §4(4) (count I).
This matter is before this Court on Caulfield’s Motion for Summary Judgment as to all counts of Visnick’s complaint against her (counts VII-X), and Visnick’s Motion for Summary Judgment as to Caulfield’s counterclaim for retaliation (count I). After hearing on June 15, 2007, and for the reasons that follow, Caulfield’s Motion for Summary Judgment is DENIED in its entirety and Visnick’s Motion for Summary Judgment is ALLOWED.

BACKGROUND

The summary judgment record contains the following undisputed facts.
Visnick was employed as an Assistant Restaurant Manager at the Marriott Hotel in Cambridge, MA. He worked with Caulfield, who was employed as a bartender at the same Marriott restaurant. Visnick was Caulfield’s direct supervisor from September 2003 until May 2004. The two regularly worked together. In May 2004, Caulfield resigned from her employment with Marriott. In November or December 2004, Caulfield reapplied for employment at Marriott and was interviewed by Visnick (“the interview”), during business hours. Shortly after the interview, a decision was made to hire an individual other than Caulfield.
Caulfield sent a letter to Jeff Miller (“Miller”), General Manager at Marriott, dated January 12, 2005 (“letter” or “Caulfield’s letter”). In that letter, Caulfield stated that after the interview with Visnick, she told a friend and former co-worker, Scott Skowronksi (“Skowronski”), that Visnick had sexually harassed her and been inappropriate during the interview. Also in the letter, Caulfield said that she, Caulfield, also told Colleen McGrath (“McGrath”), a Marriott manager, that because of Visnick’s behavior during the interview, she was withdrawing her application for employment. McGrath suggested Caulfield notify Marriott’s Human Resources Department, but Caulfield “was veiy upset at what had happened and left at that point.”
In this letter, Caulfield also stated that she resigned from Marriott in May 2004 because she had been falsely accused of over-serving alcoholic beverages to a customer and because of Visnick’s behavior. Caul-field stated.
There were two reasons for my resignation — my unfair treatment regarding this incident and the inappropriate behavior of my manager, Gary Visnick, which went well beyond lying and attempting to get me fired, as I will explain in detail later in this letter. Clearly, however, this constituted a constructive termination, as there was nothing voluntary about my resignation
As I indicated earlier, Gary Visnick was the other reason I left the Marriot [sic] in May of 2004. His immature managing, his constant sexual harassment and his inappropriate behavior were outrageous. In hindsight, it occurs to me that his lying about me to the head of security was probably in retaliation for my resisting his sexual advances and inappropriate behavior.
In addition, Caulfield alleged that Visnick had engaged in inappropriate behavior toward her during her employment and at the interview. In the letter, Caul-field stated.
The recent interview with Gary Visnick was the final straw for me. After giving this considerable thought, I have decided to file charges with the Equal Employment Opportunity Commission and the Massachusetts Commission Against Discrimination for sex discrimination, sexual harassment and retalia *729 tion and to file a lawsuit for false imprisonment, the intentional infliction of emotional distress and slander. I will file those actions against the Cambridge Marriott . . . and Gary Visnick for the illegal and outrageous treatment I have suffered at the Cambridge Marriott. However, as explained below, I will temporarily postpone those actions . . .
I recently had the opportunity to discuss this matter with a very senior employment attorney who served as . . . counsel for a major corporation for many years. This attorney represents only corporate defendants and is not willing to represent me, but he was willing to provide the following assessment and advice. He told me that ... a plaintiffs attorney would “kill to have a case like this” and that if such a case were brought against a company he represented, he would recommend immediate settlement. He also told me that in addition to the substantial probability of a large damage award . .. an even larger risk to a company like the Marriott was the severe damage to reputation that would likely occur if a case like this were to become public
This attorney advised me to write to the Marriott and try to resolve this matter in an expeditious and amicable manner prior to filing any formal legal actions for an amount that is fair in light of the facts and circumstances of my case. Given the significant number of violations of my rights and the severity of the violations, he believed $100,000 would be an entirely appropriate and more than fair amount to settle this matter. I agree . . .
In exchange for that payment, I am willing to execute a release of all claims. Please be advised that should I be forced to pursue legal action, the attorney who counseled me has promised to furnish me with a list of the best plaintiffs attorneys in Boston. Finally, he stated that ... if the case were ultimately litigated, there is a veiy high likelihood I would receive substantially more.
Please respond to me within 10 business days of the date of this letter. If I have not heard back from the Marriott by them [sic], I will be left with no choice but to retain counsel and file the actions set forth above.
Marriott conducted an internal investigation into the allegations contained in Caulfield’s letter. On March 3, 2005, after an investigation, Marriott terminated Visnick for violating Marriott’s Policy on Harassment and Professional Conduct. On March 7, 2005, Caulfield filed a formal Charge of Discrimination against Marriott with the Equal Employment Opportunity Commission (“EEOC”) based on Visnick’s alleged conduct. In May 2005, Caulfield resolved her charge against Marriott through mediation.
On March 9, 2006, Visnick filed the present suit, naming Caulfield and Marriott as parties. Visnick’s malicious interference with business relations claim (count VII), wrongful procurement of breach of contract claim (count VIII), and libel claim (count IX), are based on the statements contained in Caulfield’s letter that allege Visnick sexually harassed her and acted inappropriately toward her. Visnick’s slander claim (count X) is based on statements Caulfield made to one or more persons after the interview, but prior to her sending the letter, in which she claimed that Visnick sexually harassed her and otherwise acted inappropriately toward her. Caulfield filed her counterclaim on September 28, 2006, against Visnick. Caulfield’s counterclaim is for retaliation pursuant to G.L.c. 15 IB, 4(4) (count I) and is based on Visnick’s present suit against her.

DISCUSSION

I. Standard of Review

A. Summary Judgment

This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party has the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

II. Caulfield’s Motion for Summary Judgment

A. Defamation (counts IX andX)

Visnick alleges defamation in the form of libel and slander. While libel refers to written words that are defamatory, slander refers to spoken words that are defamatory. Draghetti v. Chmielewski, 416 Mass. 808, 812 n.4 (1994). To prevail on the libel claim, Visnick must prove that “the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiffs reputation in the community, which either caused economic loss or is actionable without proof of economic loss.” White v. Blue Cross & Blue Shield of Mass., Inc., 442 Mass. 64, 66 (2004). A claim for libel is actionable without proof of economic loss. Ravnikar v. Bocojavlensky, 438 Mass. 627, 630 (2003).
*730 Caulfield argues that Visnick’s defamation claims are barred by the absolute litigation privilege. In Massachusetts, an attorney’s statements fall under this privilege “where such statements are made [while] engaged in his function as an attorney whether in the institution or conduct of litigation or in conference and other communications preliminary to litigation.” Sriberg v. Raymond, 370 Mass. 105, 109 (1976). In Sriberg, the Supreme Judicial Court (“SJC"), announced the following test for determining whether the privilege should attach to communications preliminary to litigation:
Where a communication to a prospective defendant relates to a proceeding which is contemplated in good faith and which is under serious consideration, it is our view that the privilege should attach. This is subject to the provisions that such proceeding is not to be employed as a shield of immunity for defamation where there is not serious consideration of suit.
Id. at 109.
In announcing this test, the SJC reasoned, “(w]e have hitherto held that statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding.” Id. at 108. The absolute privilege “provides a complete defense even if the offensive statements are uttered maliciously or in bad faith,” see Doe v. Nutter, McClennan & Fish, 41 Mass.App.Ct. 137, 140 (1996), so long as the challenged remarks are relevant or pertinent to the judicial proceedings. See Sullivan v. Birmingham, 11 Mass.App.Ct. 359, 362 (1981); compare Kurker v. Hill, 44 Mass.App.Ct. 184, 191 (1996) (litigation privilege does not apply to attorney conduct in counseling and assisting clients in business matters generally).
The privilege that attaches to such statements protects the maker from any civil liability thereon. Doe, 41 Mass.App.Ct. at 140. This doctrine is grounded in “the public policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients.” Sriberg, at 108.
Caulfield argues that once she filed a charge of discrimination with the EEOC on March 7, 2005, the absolute litigation privilege applied retroactively to the statements she made following the interview and in her letter. This Court disagrees. While Caulfield’s filing with the EEOC[4] is evidence that her statements were made at a time when litigation was seriously considered and contemplated in good faith, it does not create an inescapable inference that she is protected from suit by the absolute litigation privilege. Compare Zortman v. Bildman, Civil No. 962529B, 1999 WL 1318959, *10 (Mass.Super. Jan. 15, 1999) (Hinkle, J.) [10 Mass. L. Rptr. 76] (finding that party claiming privilege still had to show that litigation was under serious consideration at the time of challenged statements, even though lawsuits were ultimately filed against him), with Meltzer v. Grant 193 F.Sup.2d 373, 381 (D.Mass. 2002) (finding that a threatened criminal prosecution that never materialized, was evidence that a civil action threatened in the same letter was not contemplated in good faith and/or seriously considered).
“Whether or not an absolute privilege applies is determined on a case-by-case basis, after a fact-specific analysis.” Fisher v. Lint, 69 Mass.App.Ct. 360, 365-66 (2007), citing Correllas v. Viveiros, 410 Mass. 314, 323 (1991). Such an analysis permits “proper consideration of the balance between a plaintiffs right to seek legal redress for injuries suffered and the public policy supporting the application of such a strong protection from the burdens of litigation.” Id. As all of Caulfield’s statements were made prior to litigation, the Sriberg test applies. Once the Sriberg test has been satisfied, the privilege is absolute. Doe, 41 Mass.App.Ct. at 140. The burden is on Caulfield to show that the privilege is applicable to her statements. Roketenetz v. Woburn Daily Times, 1 Mass.App.Ct. 156, 161 (1973) (citations omitted). Applying the Sriberg test, this Court finds that Caulfield has not established that her communications with Marriott and Marriott employees were made at a time when litigation was under serious consideration and contemplated in good faith.
First, with regard to Caulfield’s statements made to Skowronksi and McGrath, there is no evidence before this Court that Caulfield seriously considered or contemplated litigation in good faith when she made them. In fact, Caulfield chose not to report Visnick’s behavior to Marriott’s Human Resources Department. Such statements would, at most, be conditionally privileged. Correllas, 410 Mass. at 322. A conditional privilege has been applied in cases where “the defendants went to the police, or communicated with others, on their own initiative and published an accusation which might otherwise have never been known.” Id. at 322-23 and cases cited. In such cases, “the defendants could not reasonably argue that they were entitled to the protection of an absolute privilege” as their allegedly defamatory statements were made at a time when litigation was not contemplated or proposed. Id. at 323. Therefore, Caulfield is not shielded from suit for defamation by slander (count X) by the absolute litigation privilege.
Caulfield’s letter to Marriott was dated approximately two months prior to her filing a complaint with the EEOC. Upon receiving her letter, Marriott conducted an internal investigation into Caulfield’s allegations. Visnick was terminated from Marriott on March 3, 2005. Caufield filed her charges with the EEOC and four days later, on March 7, 2005.
In her letter, Caulfield states that she consulted an attorney regarding her allegations against Marriott *731 and Visnick. However, Caulfield has not met her burden of demonstrating that the absolute litigation privilege applies to the statements in her letter. Roketenetz, 1 Mass.App.Ct. at 161. Caulfield has not offered this Court any evidence, such as an affidavit from counsel, that she did seek legal advice. See Aronson v. Kinsella, 58 Cal.App.4th 254, 268 (1997) (noting that when defendant raised the litigation privilege in his motion for summary judgment, he attached attorneys’ declarations). A reasonable fact finder could find that Caulfield did not consult with counsel.
It is Caulfield’s position that her letter was a demand letter. However, a fact finder could find that Caulfield’s letter differs from a classic demand letter. Caulfield’s letter was not written by an attorney, or on an attorney’s letterhead. See Sriberg, 370 Mass. at 106-07; Aronson, 58 Cal.App.4th at 270. This Court also notes that Caulfield has not proceeded pro se, and she has not assumed the functions of an attorney on her own behalf. In her letter, Caulfield states that she has “decided to file charges,” but will “temporarily postpone those actions.” She goes on to instruct Marriott to pay her $100,000.00, stating that if she is “forced to pursue formal legal action,” there is “a very high likelihood she would receive more.” She then gave Marriott ten business days to respond to her instruction for $100,000.00.
Caulfield, however, has not provided this Court with evidence that Marriott contacted her within ten business days or even during its internal investigation. Further, Caulfield has not shown when she actually retained counsel. What is before the Court is that Caulfield did not file with the EEOC until after Marriott conducted its investigation and fired Visnick. Also, there is evidence that Caulfield did not settle with Marriott until two months after Visnick’s firing. Although the contents of Caulfield’s letter are sufficiently connected and pertinent to her EEOC filing, she has given this Court no explanation why she refrained from filing with the EEOC for two months.
Therefore, from the tone of her letter, and the facts before this Court, a fact finder could find that Caulfield instructed Marriott to pay her $100,000,00, without seriously considering litigation, which was contemplated in good faith. See Mezzetti v. State Farm Mutual Automobile Insurance Co., 346 F.Sup.2d 1058, 1065 (N.D.Cal. 2004), quoting Edwards v. Centex Real Estate Corp., 53 Cal.App.4th 15, 36 (1997) (holding that “the privilege attaches at that point in time that imminent access to the courts is seriously proposed by a party in good faith for the purpose of resolving a dispute, and not when a threat of litigation is made merely as a means of obtaining settlement”).
For these reasons and on these facts, this Court cannot conclude as a matter of law, that Caulfield’s statements in her letter are privileged pursuant to the absolute litigation privilege. Accordingly, Caulfield’s Motion for Summary Judgment as to Visnick’s defamation by libel and defamation by slander claims (counts IX and X respectively) is DENIED.

B. Malicious Interference with Advantageous Business Relations (count VII) and Wrongful Procurement of Breach of Contract (count VIII)

Caulfield also argues that Visnick’s malicious interference with advantageous business relations (count VII) and wrongful procurement of breach of contract (count VIII) claims against her are barred by the absolute litigation privilege. To make out a claim for the tort of interference with advantageous business relations, Visnick must prove, “(1) [the existence of] a business relationship or contemplated contract of economic benefit; (2) the defendant’s knowledge of such relationship; (3) the defendant’s intentional and malicious interference with it; (4) plaintiffs loss of advantage directly resulting from the defendant’s conduct.” Comey v. Hill, 387 Mass. 11, 19 (1982) (citation and internal quotations omitted). Visnick may recover on his claim for wrongful procurement of breach of contract if he establishes that (1) he had an existing contract with a third party, (2) the defendant knew of that fact, (3) the defendant induced the other person to break the contract, and (4) damage was incurred. United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812 (1990).
Visnick’s claims for malicious interference with advantageous business relations and wrongful procurement of breach of contract are based on the same statements as his defamation claims. The Appeals Court has extended to application of the absolute litigation privilege to “any civil liability based on the allegations in [the] complaint[ ].” Sullivan at 367. The SJC explained the rationale behind extending the privilege’s protection in this way: “[a] privilege which protected an individual from liability for defamation would be of little value if the individual were subject to liability under a different theory of tort.” Correllas, 410 Mass. at 324.
Therefore, in order for the absolute litigation privilege to apply to Caulfield’s statements, they must have been made at a time when litigation was contemplated in good faith and under serious consideration. This Court has determined that the absolute litigation privilege does not apply to Caulfield’s statements as a matter of law. Accordingly, Caulfield’s Motion for Summary Judgment as to Visnick’s malicious interference with advantageous business relations (count VII) and wrongful procurement of breach of contract (count VIII) claims is DENIED.

III. Visnick’s Motion for Summary Judgment

Caulfield has filed a counterclaim alleging that Visnick’s lawsuit naming her as a defendant constitutes retaliation in violation of G.L.c. 151B, §4(4).[5] To make a prima facie case for retaliation, Caulfield must show: that she (1) engaged in protected conduct; and (2) suffered some adverse action; and that (3) a “causal *732 connection existed between the protected conduct and the adverse action.” Mole v. Univ. of Mass., 442 Mass. 582, 591-92 (2004), quoting Mesnick v. General Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991). See also MacCormack v. Boston Edison Co., 423 Mass. 652, 662 (1996) (holding that an employee must establish a causal connection between the complaint of discrimination and the retaliation). To establish a causal connection, an employee may establish an inference based on the timing between the protected conduct and the adverse employment action. Mole, 442 Mass. at 592. The mere fact that one event followed the other is not sufficient to establish causation by itself, but where the temporal gap is very close an inference of causation is permissible. Id. at 592, 595.
Visnick argues that Caulfield’s counterclaim fails because she is seeking to enforce G.L.c. 15IB, §4(4) against a private individual outside of an employment setting. At the time Caulfield filed her complaint of discrimination with the EEOC, neither she nor Visnick were Marriott employees. However, G.L.c. 151B, §4(4) applies to “any person,” not just employers. See Beaupre v. Cliff Smith & Assocs., 50 Mass.App.Ct. 480, 490 (2000). Therefore, an individual employee, as Visnick was, may be liable under G.L.c. 151B, §4(4). Id. Caulfield’s filing of a discrimination complaint with the EEOC is also protected conduct pursuant to G.L.c. 15IB, §4(4).
However, Caulfield is missing an essential element, in that she cannot show an adverse action. “To be adverse, an action must materially change the conditions of [plaintiff]’s employ.” Gu v. Boston Police Dept., 312 F.3d 6, 14 (1st Cir. 2002) (citations omitted). In MacCormack, the SJC held that “subjective feelings of disappointment and disillusionment” were insufficient to make out a claim of retaliation. 423 Mass. at 663. The SJC stated that in order to establish a “change in working conditions which materially disadvantaged him,” the plaintiff would need to offer “objective evidence that he had been disadvantaged in respect to salary, grade, or other objective terms and conditions of employment.” Id. at 662-63.
Here, Caulfield had voluntarily left her employment at Marriott and then reapplied for employment. She did not get the position, but she does not allege in her counterclaim that she was denied the position because of her protected activity. In her letter, Caulfield also alleges that she was constructively discharged due to Visnick’s behavior. However, she does not allege that she was constructively discharged because of her protected activity. Caulfield cannot show a change in her working conditions that materially disadvantaged her. She has made no allegations that she was fired from Marriott, that her pay or benefits were changed, or that she did not get rehired because she filed a charge of discrimination with the EEOC. Therefore, she cannot show objective evidence that she was disadvantaged in respect to any objective terms and conditions of employment.[6] Finlan v. Verizon New England, Inc., Civil No. 024616G, 2006 WL 2423808, **18-21 (Mass.Super. July 31, 2006) (Connolly, J.).
Caulfield is correct that an employer’s filing of a lawsuit against a former employee, who has filed a charge of discrimination, may be retaliatory if the lawsuit does not have a legitimate basis in law and fact. Sahli v. Bull HN Information Systems, Inc., 437 Mass. 696, 697 (2002). However, even with a lawsuit filed against an employee, to make out a claim for retaliation pursuant to G.L.c. 151B, §4(4), the employee must still show she suffered an adverse employment action. In any event, Caulfield’s claim that Visnick’s filing ofalawsuitis aviolation of G.L.c. 151B, §4(4) and is retaliatory, must fail. As the SJC stated in Sahli, where “the only evidence of retaliatory purpose [is] the filing of the lawsuit. . . such evidence is inadequate, as a matter of law, to justify any burden on [Visnick’s] constitutional right to petition the courts.” 437 Mass. at 707, quoting BE&K Constr. Co. v. NLRB, 536 U.S. 516, 537 (2002). Visnick’s filing of a lawsuit does not violate G.L.c. 151B, §4(4). Therefore. Caulfield’s claim must fail. Accordingly, Visnick’s Motion for Summary Judgment on Caulfield’s counterclaim for retaliation in violation of G.L.c. 151B, §4(4) is ALLOWED.

ORDER

For the foregoing reasons, it is hereby ORDERED, that plaintiffs Motion for Summary Judgment is DENIED in its entirety and defendant’s Motion for Summary Judgment is ALLOWED.

Plaintiff brings counts I-VI against defendant Marriott only and counts VII-X against defendant Caulfield only.

The absolute litigation privilege may be applied to a quasi-judicial proceeding where the entity that conducts the proceeding has sufficient procedural protections in place so as to differentiate it from one that provides merely an administrative function. See Fisher v. Lint, 69 Mass.App.Ct. 360, 365-69 (2007). This Court finds that the MCAD and the EEOC provide sufficient procedural protections such that the absolute litigation privilege may apply to proceedings before them. See G.L.c. 151B, §5; 29 Code Fed. Regs. §1601.

General Laws c. 151B, §4(4) states:
It shall be an unlawful practice:
For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five.

As Caulfield cannot show an adverse employment action, and therefore cannot make out a claim for retaliation pursuant to G.L.c. 151B, §4(4), there is no need to determine whether she can show causation.