NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

14-P-1963                                          Appeals Court

DEVENIA MACK vs. WELLS FARGO BANK, N.A., & others.[1]

No. 14-P-1963.

Worcester.    October 5, 2015. - December 1, 2015.

Present: Vuono, Carhart, & Sullivan, JJ.

Practice, Civil, Summary judgment. Real Property, Mortgage. Mortgage, Foreclosure. Consumer Protection Act, Mortgage of real estate. Massachusetts Civil Rights Act. Immunity from suit. Rules of Professional Conduct.

Civil action commenced in the Superior Court Department on October 15, 2010.

The case was heard by Brian A. Davis, J., on motions for summary judgment.

Robert M. Mendillo for Harmon Law Offices, P.C., & another.
James L. O'Connor, Jr. (Barry M. Altman with him) for the plaintiff.

CARHART, J. In this mortgage foreclosure action, the

plaintiff alleges that Harmon Law Offices, P.C. (Harmon), as

counsel for mortgagor Wells Fargo Bank, N.A. (Wells Fargo), and

_____

[1] Harmon Law Offices, P.C.; Commonwealth Auction Associates, Inc.; Mortgage Electronic Registration Systems, Inc. (MERS); and MERSCORP.

Commonwealth Auction Associates, Inc. (Commonwealth), violated G. L. c. 93A, §§ 2 and 9, and the Massachusetts Civil Rights Act, G. L. c. 12, § 11I (MCRA), by continuing to advertise and schedule foreclosure auctions of her property in violation of a temporary restraining order and preliminary injunction prohibiting them from doing so.[2] Harmon and Commonwealth (together, the defendants) moved for summary judgment, arguing, among other things, that the "litigation privilege" immunizes them from civil liability for their actions. Summary judgment was denied, and the defendants seek interlocutory review. See Visnick v. Caulfield, 73 Mass. App. Ct. 809, 811 n.4 (2009).

We agree that Commonwealth's actions are not privileged as a matter of law and affirm the order denying Commonwealth's motion for summary judgment. However, because we conclude that Harmon's actions are protected by the litigation privilege, we reverse the denial of Harmon's motion for summary judgment and remand for the entry of summary judgment in Harmon's favor.

Background. The following material facts are undisputed. On May 28, 2010, Harmon notified the plaintiff that it had been retained by Wells Fargo to foreclose on her mortgage. On September 10, 2010, Harmon sent the plaintiff notice pursuant to

---

[2] By stipulation, Wells Fargo was dismissed from the action with prejudice. A motion to dismiss by MERS and MERSCORP was allowed. Wells Fargo, MERS, and MERSCORP are not parties to this appeal.

G. L. c. 244, §§ 14 and 17B, of Wells Fargo's intent to foreclose on the mortgage and to collect from her any deficiency. The notice also advised the plaintiff that a mortgage foreclosure sale of her property would take place on October 18, 2010. On October 13, 2010, the plaintiff's attorney wrote to Harmon and challenged Wells Fargo's standing to foreclose. The plaintiff's attorney requested a postponement of the scheduled foreclosure auction and stated that, "[i]n the event [he did] not receive written confirmation of a postponement from [Harmon] by 4:00 P.M. on October 14, 2010, [he would] seek a temporary restraining order in a court of competent jurisdiction."

On October 15, 2010, the plaintiff filed a wrongful foreclosure suit against Wells Fargo. She applied for a preliminary injunction and was granted a temporary restraining order (TRO), which stated:

> "The Defendant Wells Fargo Bank, N.A., together with its agents, attorneys and others acting in its behalf are hereby ordered and temporarily restrained from foreclosing, advertising for sale or otherwise transferring the real estate of [the plaintiff] located at 25 Nichols Street, Westminster, Massachusetts."

The same day, Wells Fargo postponed the scheduled foreclosure auction until November 1, 2010, and Harmon received actual notice of the TRO.

Harmon routinely hires Commonwealth, with which it shares a common address and mutual officers, to conduct foreclosure auctions for Harmon's clients. From October 15 through 18, 2010, Commonwealth continued to list the plaintiff's property on its foreclosure auction Web site. However, at Harmon's direction, it changed the status of the auction to "postponed." On October 18, 2010, a Commonwealth agent appeared at the property to publicly proclaim postponement of the sale to November 1, 2010. On October 20, 2010, in response to a demand from the plaintiff's attorney, Harmon told Commonwealth to remove the plaintiff's property from its auction listing Web site.

On October 28, 2010, after a hearing, a judge in the Superior Court granted the plaintiff's request for a preliminary injunction. An order entered enjoining and restraining Wells Fargo, "its agents, servants, attorneys and deputies . . . from foreclosing on the property owned by the plaintiff." The next day, Harmon sent the plaintiff a letter "to inform [her] that the foreclosure sale on [her] property which was scheduled for November 1, 2010 has been postponed until January 26, 2011 at 10:00 a.m." (emphasis in original). On November 1, 2010, a Commonwealth agent appeared at the plaintiff's home and publicly proclaimed that the foreclosure auction had been postponed.

On December 23, 2010, the plaintiff filed a first amended complaint naming Harmon and Commonwealth as additional defendants, and alleging violations by them of G. L. c. 93A, §§ 2 and 9, and MCRA.  The first amended complaint alleged that the defendants communicated directly with the plaintiff on October 29, 2010, while knowing her to be represented by an attorney; engaged in conduct intended to harass, oppress, or abuse the plaintiff in connection with the collection of a debt; and continued to schedule and advertise foreclosure auctions of the plaintiff's home in violation of the TRO and preliminary injunction.  On January 6, 2011, the plaintiff filed a verified complaint for contempt, in which she alleged that the defendants' rescheduling of the foreclosure auction for January 26, 2011, constituted contempt of the preliminary injunction. In November, 2011, the plaintiff filed a second amended complaint alleging the same violations of G. L. c. 93A and MCRA by the defendants.

On July 13, 2012, a judge of the Superior Court dismissed the plaintiff's contempt complaint after concluding that she had failed to sustain her burden of proving "a clear and undoubted disobedience of a clear and unequivocal command of the court." On February 19, 2014, the defendants moved for summary judgment and the plaintiff filed a cross motion for summary judgment as to liability only.  A different Superior Court judge denied both

summary judgment motions, ruling that the defendants' alleged actions in violation of the TRO and preliminary injunction do not fall within the scope of the "litigation privilege" because "they were undertaken solely for the purpose of effecting a non-judicial foreclosure of the Plaintiff's interest in the Property." The defendants appeal from the judge's decision insofar as it denied summary judgment "based upon their defense of absolute litigation privilege."

Discussion. 1. Standard of review. We review the judge's decision de novo, Miller v. Cotter, 448 Mass. 671, 676 (2007), looking to the summary judgment record to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). We will uphold an order denying summary judgment "if the trial judge ruled on undisputed material facts and his ruling was correct as a matter of law." Commonwealth v. One 1987 Mercury Cougar Auto., 413 Mass. 534, 536 (1992).

2. The litigation privilege. Our courts have held that "statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding." Sriberg v. Raymond, 370 Mass. 105, 108 (1976)

(Sriberg).  The privilege applies "[w]here a communication to a prospective defendant relates to a proceeding which is contemplated in good faith and which is under serious consideration," id. at 109, but does not encompass "attorneys' conduct in counselling and assisting their clients in business matters generally."  Kurker v. Hill, 44 Mass. App. Ct. 184, 192 (1998).  "The privilege applies not only to defamation claims brought against an attorney, but to civil liability generally," Bartle v. Berry, 80 Mass. App. Ct. 372, 378 (2011), and is based on "[t]he public policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients."  Sriberg, supra at 108.

"Whether an absolute privilege applies . . . is determined on a case-by-case basis, after a fact-specific analysis." Giuffrida v. High Country Investor, Inc., 73 Mass. App. Ct. 225, 242 (2008) (Giuffrida).  As the parties seeking summary judgment on the basis of the privilege, the defendants bear the burden of demonstrating the absence of a triable issue on whether their acts of sending letters to the plaintiff, appearing at her home to announce the postponement of the foreclosure auctions, and continuing to list the plaintiff's property on an auction Web site, are privileged.  See Smith v. Suburban Restaurants, Inc., 374 Mass. 528, 531 (1978).

The judge correctly concluded that Commonwealth cannot sustain this burden. The undisputed facts demonstrate that Commonwealth appeared at the plaintiff's property, and continued to list the property on its auction Web site, in furtherance of Wells Fargo's foreclosure of the plaintiff's mortgage. "Massachusetts does not require . . . judicial authorization to foreclose on a mortgaged property," U.S. Bank Natl. Assn. v. Ibanez, 458 Mass. 637, 645-646 (2011) (Ibanez), and "[t]he privilege extends [only] to circumstances where the statements are made preliminary to a proposed or contemplated judicial proceeding" (emphasis added). Fisher v. Lint, 69 Mass. App. Ct. 360, 366 (2007). Commonwealth was not named as a defendant in the plaintiff's original wrongful foreclosure complaint, and it was neither "a party, counsel [n]or witness in the institution of, or during the course of, [that] judicial proceeding" when it engaged in the conduct complained of. Sriberg, supra. While Commonwealth was later named as a defendant in the first amended complaint, and "it is well-established that communications by a party preliminary to a proposed judicial proceeding also are entitled to protection," Giuffrida, supra, nothing in the summary judgment record supports an inference that Commonwealth took the actions complained of in contemplation of being named as a party to the plaintiff's wrongful foreclosure suit. Thus,

as a matter of law, Commonwealth is not immune from civil liability for its actions.

However, "the undisputed facts fully support the application of the privilege" to Harmon. Ibid. Attorney Andrew Harmon states in his affidavit in support of the motion for summary judgment that (1) Harmon was retained by Wells Fargo to foreclose on the plaintiff's mortgage; (2) in the course of this representation, Harmon failed to advise Commonwealth of the TRO until October 20, 2010, because it did not consider the postings to violate the TRO; (3) Harmon sent the plaintiff a letter in the course of its representation of Wells Fargo "advising that the November 1, 2010 foreclosure sale was postponed until January 26, 2011"; and (4) "[t]he letter was sent directly to [the plaintiff] because [of] Harmon's legal interpretation of the relevant statutes and case law." It is undisputed that Harmon was pursuing the foreclosure in its role as attorney for Wells Fargo; that the plaintiff advised Harmon of her intent to file suit if Wells Fargo did not postpone the foreclosure auction; and that Harmon represented Wells Fargo with respect to that suit when it sent the October 29, 2010, letter to the plaintiff.[3] Accordingly, it is undisputed that the statements

---

[3] An October 19, 2010, electronic mail message (e-mail) from Harmon's attorney to the plaintiff's attorney, stating that "Harmon Law Office has not been retained to represent Wells Fargo" with respect to the plaintiff's suit, is insufficient to

and actions about which the plaintiff complains were "made by an attorney engaged in his function as an attorney . . . in the institution or conduct of litigation or in . . . communications preliminary to litigation."  Sriberg, supra at 109.  The statements were "relevant or pertinent to the judicial proceedings" instituted by the plaintiff against Wells Fargo, Robert L. Sullivan, D.D.S., P.C. v. Birmingham, 11 Mass. App. Ct. 359, 362 (1981) (Sullivan), and "the absolute privilege which attaches to those statements protects the maker from any civil liability thereon."  Doe v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 140 (1996).  Thus, as a matter of law, the plaintiff may not recover of Harmon under G. L. c. 93A, or MCRA.

We note that this conclusion is required by the undisputed facts of this case.  Our decision should not be interpreted as condoning the actions taken by Harmon.  We agree with the plaintiff that Harmon's acts of communicating directly with her while knowing her to be represented by counsel, failing to advise Commonwealth that it was prohibited by the TRO from advertising a sale of her property, and scheduling a foreclosure

_____

create a genuine dispute as to whether litigation privilege applies, where it is undisputed that Harmon represented Wells Fargo in the foreclosure action that formed the basis of the plaintiff's complaint; Harmon was notified of the plaintiff's intention to file suit before it engaged in the acts complained of; and, two days later on October 21, 2010, Harmon's attorney sent the plaintiff's attorney another e-mail stating that Harmon "ha[s] been retained to represent Wells Fargo in this case."

sale of the property despite being prohibited by the preliminary injunction from conducting any such sale, are troubling. These actions may not have risen to the level of contempt,[4] but they arguably violate our Rules of Professional Conduct.[5] However, an attorney's liability to a person injured by his misconduct "must be based on a recognized and independent cause of action and not on ethical violations." Sullivan, supra at 368. Absent allegations that support a claim that is not barred by the absolute privilege, see, e.g., Harmon Law Offices, P.C. v. Attorney Gen., 83 Mass. App. Ct. 830, 837 n.9 (2013) (noting that "a law firm may be liable under c. 93A if it engages in conduct beyond the functions of traditional representation"); Akar v. Federal Natl. Mort. Assn., 843 F. Supp. 2d 154, 163-164 (D. Mass. 2012) (holding that litigation privilege does not bar

---

[4] As noted infra, a judge in the Superior Court found that the defendants were not in contempt of the preliminary injunction.

[5] See Mass.R.Prof.C. 4.2, as appearing in 471 Mass. 1440 (2015) ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so or by law or a court order"); Mass.R.Prof.C. 4.4(a), as appearing in 471 Mass. 1443 (2015) ("In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay or burden a third person"); Mass.R.Prof.C. 8.4, as appearing in 471 Mass. 1482-1483 (2015) ("It is professional misconduct for a lawyer to . . . [c] engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; [or] [d] engage in conduct that is prejudicial to the administration of justice").

claims under Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq.); In re Lynn-Weaver, 385 B.R. 7, 11-12 (Bankr. D. Mass. 2008) (holding that Harmon's acts of postponing foreclosure sales after filing of bankruptcy petition violate automatic stay provisions of 11 U.S.C. § 362[a]), we are constrained to conclude that, in this case, Harmon "ha[s] an absolute defense to all of the plaintiff's claims for relief." Sullivan, supra.

3.  Conclusion.  In light of the foregoing, we affirm the order denying Commonwealth's motion for summary judgment on the basis that it is immune from civil liability under the litigation privilege.  However, because the privilege applies to Harmon's actions, the order denying Harmon's motion for summary judgment is reversed, and the matter is remanded for the entry of summary judgment in favor of Harmon.[6]

So ordered.

---

[6] The plaintiff's request for appellate attorney's fees and costs is premature, and denied without prejudice.